**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

|                                         |    |                                        |
| :-------------------------------------- | :- | :------------------------------------- |
| ALFRED DEGENNARO,                       | :  |                                        |
|                                         | :  |                                        |
|                     Plaintiff,          | :  |                                        |
|         v.                              | :  | Civil Action No. 3:16-cv-5274-BRM-DEA  |
|                                         | :  |                                        |
| AMERICAN BANKERS INSURANCE              | :  |                                        |
| COMPANY OF FLORIDA;                     | :  | **OPINION**                            |
| GOVERNMENT EMPLOYEES                    | :  |                                        |
| INSURANCE COMPANY; and                  | :  |                                        |
| ASSURANT SPECIALTY PROPERTY,            | :  |                                        |
|                                         | :  |                                        |
|                     Defendants.         | :  |                                        |

---

**MARTINOTTI, DISTRICT JUDGE**

Before this Court are Defendants American Bankers Insurance Company of Florida and Assurant Specialty Property's (collectively, "ABIC") Motion to Dismiss (ECF No. 20)[1] and Government Employees Insurance Company's ("GEICO") (together with ABIC, "Defendants") Motion to Dismiss (ECF No. 21), both pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Alfred DeGennaro ("Plaintiff") opposes the motions. (ECF Nos. 23-24.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, ABIC and GEICO's Motions to Dismiss are **GRANTED WITHOUT PREJUDICE.**

---

[1] American Bankers Insurance Company of Florida is an indirect wholly-owned subsidiary of Assurant, Inc. (ECF No. 20-2 at 1 n.1.) Assurant Specialty Property is a brand name and service mark of Assurant, Inc. and not a legal entity. (*Id.*) Plaintiff acknowledges it named the wrong defendant and will amend the Complaint to add Assurant, Inc. (ECF No. 23 at 21.) Nonetheless, at this time, the Court will refer to both entities as ABIC.

## I. BACKGROUND

For the purposes of these motions to dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original).

Sometime in 2013, Plaintiff contacted GEICO, his automobile insurance carrier at the time, to discuss obtaining a comprehensive personal liability coverage policy and a one million dollar umbrella policy. (Compl. (ECF No. 1) ¶¶ 3, 5). "Plaintiff was told that in order to acquire the comprehensive personal liability coverage with an umbrella policy he would have to acquire a renter's insurance policy with $10,000 contents and a minimum of $300,000 comprehensive personal liability coverage." (*Id.* ¶ 4.) He was further informed that "if he purchased the aforesaid renters policy he would then qualify for a [one] million dollar umbrella coverage policy" and that "it would cover his auto insurance as well as his renters insurance." (*Id*. ¶¶ 5-6.)

In January 2014, Plaintiff secured a renter's policy issued by ABIC, policy number 2659730 (the "Renter's Policy"), with an initial policy period from January 31, 2014, to January 31, 2015. (*Id.* ¶ 7.) As required by GEICO, the policy consisted of $300,000 personal liability coverage per occurrence. (*Id.* ¶ 13.)

On January 21, 2014, Plaintiff received a letter from GEICO regarding his umbrella policy and thanking him for choosing GEICO. (*Id.* ¶ 8.) Specifically, the letter stated:

> After careful review of your policy we have determined that you "may not" meet the required underlying liability limit of $300,000 for each property you own, rent or rent too [sic] own. If you are not carrying the adequate limit, a gap of coverage could occur. In the case of a loss you would be personally responsible for the difference

. . . . "Failure to meet may result in the cancellation of your umbrella policy[.]"

(*Id.* and ECF No. 21-6 at 1.) The letter further indicated Plaintiff should "review his basic homeowner's policy for compliance and that failure to meet the required underlying limits may result in the cancellation of his umbrella policy." (ECF No. 1 ¶ 9.) It also requested that Plaintiff "send a copy of [his] declaration page showing the required minimum limits." (*Id.*) On January 30, 2014, Plaintiff allegedly received an email from propertyquotes@geico.com "thanking him for choosing ABIC for his rental needs and explaining that his coverage would become effective on January 31, 2014 and included $10,000 personal property and $300,000 personal liability." (*Id.* ¶ 11.) On January 31, 2014, Plaintiff received an email from rentersmail@assurant.com "stating they were glad he chose Assurant and transmitting the full copy of his [R]enter's [P]olicy along with the [d]eclaration [p]age." (*Id.* ¶ 12.) The declaration page accompanying the Renter's Policy stated:

| COVERAGE | AMOUNT OF COVERAGE | | PREMIUM |
|---|---|---|---|
| **PERSONAL PROPERTY** | **$10,000 LESS DEDUCTIBLE OF** | **$500** | **$90.00** |
| **PERSONAL LIABILITY** | **$300,000 PER OCCURRENCE** | | **$24.00** |
| **MEDICAL PAYMENTS** | **$500 PER PERSON** | | **INCL** |
| **LOSS OF USE** | **$2,000 PER OCCURRENCE** | | **INCL** |

(Ex. B to Certif. of Joseph T. Kelleher (ECF No. 20-3) at 10; *see* ECF No. 1 ¶ 13.) On February 3, 2014, Plaintiff allegedly sent GEICO a fax, referencing the January 21, 2014 letter, transmitting his Renter's Policy, and a fax confirmation was received. (ECF No. 1 ¶¶ 19-20.) Plaintiff alleges GEICO never responded to Plaintiff's fax. (*Id.* ¶ 26.)

On February 26, 2014, ABIC alleges it sent Plaintiff an amended declaration page reflecting that his personal liability was reduced to $100,000 per occurrence. (ABIC's Br. (ECF No. 20-2) at 6). Plaintiff alleges he never received the letter. (ECF No. 1 ¶ 54.) However, Plaintiff admits he received another email from rentersmail@assurant.com "stating they were glad he chose Assurant and claiming that they were transmitting the renter's insurance policy." (*Id.* ¶ 21.) No

3

policy was attached to the email, but a revised declaration page was attached, indicating Plaintiff's personal liability was now $100,000 per occurrence. (*Id.*) Specifically, the declaration page demonstrated:

| COVERAGE | AMOUNT OF COVERAGE | | PREMIUM |
|---|---|---|---|
| **PERSONAL PROPERTY** | **$10,000 LESS DEDUCTIBLE OF** | **$500** | **$90.00** |
| **PERSONAL LIABILITY** | **$300,000 PER OCCURRENCE** | | **$24.00** |
| **MEDICAL PAYMENTS** | **$500 PER PERSON** | | **INCL** |
| **LOSS OF USE** | **$2,000 PER OCCURRENCE** | | **INCL** |

(Ex. C to ECF No. 20-3.) The declaration page also reflected a change in premium from $116 to $100, and provided Plaintiff a $16 credit. (ECF No. 1 ¶ 21.)

At the end of the policy term, sometime in November 2014, Plaintiff renewed the Renter's Policy for the period of January 31, 2015, to January 31, 2016. (*Id.* ¶ 30.) Like the amended declaration page sent to Plaintiff in February 2014, the renewal declaration page reflected a personal liability coverage of $100,000 per occurrence. (*Id.*) On January 12, 2015, Plaintiff also received a confirmation email from Assurant listing "personal liability at $100,000 without the 'per occurrence' language." (*Id.* ¶ 32.)

Plaintiff renewed his Renter's Policy for a third policy term in December of 2015, for the period of January 31, 2016, to January 31, 2017. (*Id.* ¶ 34.) The renewal declaration page reflected a personal liability coverage of $100,000 per occurrence. (*Id.*) Plaintiff also received a confirmation email from Assurant listing "personal liability at $100,000 without the 'per occurrence' language." (*Id.*) This time, Plaintiff alleges he reviewed the paperwork and noticed "incongruities." (*Id.* ¶ 35.) Plaintiff contacted one of the Defendants to question the coverage and "was told that he had a $200,000 gap in coverage for which he would be personally liable."[2] (*Id.* ¶ 36.) On January 19, 2016, ABIC allegedly sent Plaintiff an email stating:

---

[2] Plaintiff does not articulate which Defendant he contacted and the record is unclear.

> Sorry it took so long for me to get back with you. The $300,000.00 liability was added, back when you purchased the policy. After the underwriters went over the questionnaire and a business was ran [sic] on the premises the liability was canceled. At that time having a business on the premises where you live would have disqualified you from the liability of $300,000.00. That has since changed. You were refunded 16.00 back on 2/24/14 and a new declaration page was sent. When we last spoke I've increase [sic] the liability to $300,000.00 and your new premium is 16.78.
>
> I apologize for any inconvenience.

(*Id.* ¶ 37.)

On February 10, 2016, Plaintiff filed a complaint with the New Jersey Department of Banking and Insurance ("NJDOBI") "to address the reduction of his comprehensive personal liability coverage [in his Renter's Policy] from $300,000 to $100,000." (*Id.* ¶ 45.) NJDOBI investigated the matter. (*Id.*) As part of the investigation, ABIC submitted a letter to NJDOBI on March 8, 2016 responding to Plaintiff's complaint. (*Id.* ¶ 45-47.) The letter stated, in part:

> [Plaintiff] purchased his Renters Insurance policy RIN 2659730 through our [GEICO] affiliate on January 30, 2014 with an effective date of January 31, 2014. Once the policy is issued, a policy package is sent to the insured. . . .
>
> . . . .
>
> During the underwriting period, we determined that due to a system issue [Plaintiff's] policy was approved with $300,000 comprehensive personal liability. On February 24, 2014, based on our underwriting guidelines at the time the policy was purchased, [Plaintiff] did not qualify for the $300,000 limit because he conducted business at the insured location. A letter was emailed to [Plaintiff] at adlaw76@gmail.com informing him that his comprehensive personal liability coverage would be reduced from $300,000 to $100,00 and an update declaration page would be issued under separate cover . . . .
>
> . . . .
>
> On January 13, 2016, [Plaintiff] contacted out [sic] customer service department and inquired about the limit of his

comprehensive personal liability coverage on his Renters. He was informed at that time that his limit was $100,000. [Plaintiff] was asked the qualifying questions in order to increase his comprehensive personal liability coverage to $300,000. The request was approved, the increase was processed and confirmation was sent to [Plaintiff.]

.  .  .  .

At this time, we will honor [Plaintiff's] request to increase the liability coverage to $300,000, back to the inception date of the policy. This change will cause a change in premium from the inception of $16 for the first term and a prorated amount for the second term if he wishes to have the change processed.

(Ex. D to ECF No. 20-3.) After completing its investigation, the NJDOBI found:

This is written in response to your request for assistance with your insurance concern.

The company has provided this Department with the requested information regarding the matter you wished addressed. In response to your inquiry, GEICO[3] Insurance records indicate you purchased a Renters Insurance policy RIN 2659730 on January 30, 2014 with an effective date of January 31, 2014. You were mailed a policy package that includes a cover letter that state that it is for new renter's insurance protection, underwritten by [ABIC]. During the underwriting period, records show GEICO determined that due to a system error your policy was approved with $300,000 comprehensive personal liability. On February 24, 2014, based on GEICO insurance underwriting guidelines at the time your policy was purchased, you did not qualify for the $300,000 limit because you conducted business at the insured location. A letter was emailed to you at adlaw76@gmail.com informing you that your comprehensive personal liability coverage would be reduced from $300,000 to $100,000 and an updated declaration page would be issued under a separate cover. GEICO will be put on notice for this error. At this time, due to the error made GEICO will honor your request to increase the liability coverage to $300,000, back to the inception date of the policy. This change will cause a change in premium from the inception of $16 for the first term and a prorated amount for the second term if you wish to have the change

---

[3] Throughout the letter, NJDBOI mistakenly refers to GEICO instead of ABIC as the party who issued the Renter's Policy.

processed. After considering all the information available to us, it appears that the matter has been favorably resolved.

In view of the information provided, unless advised to the contrary, we will consider the matter resolved and close our file. Thank you for contacting us.

(Ex. A to ECF No. 20-3 and ECF No. 1 at 64.) Plaintiff admits "Defendants corrected the gap in coverage." (ECF No. 1 ¶ 80.)

Instead of paying the additional premium to increase the per occurrence personal liability limit of the Rental's Policy, Plaintiff cancelled both his Renter's Policy and umbrella policy. (*Id.*) Notably, Plaintiff never made a claim under the Renter's Policy or umbrella policy. (*Id.* ¶¶ 152-53.)

Nonetheless, on August 30, 2016, Plaintiff filed a Complaint asserting fourteen counts: (1) a New Jersey Consumer Fraud Act ("CFA") violation against ABIC regarding the "changing terms" of the Renter's Policy (Count One); (2) a CFA strict liability claim against GEICO regarding the "changing terms" of the Renter's Policy (Count Two); (3) a CFA strict liability claim against GEICO regarding the "changing terms" of the Renter's Policy (Count Three); (4) a CFA violation against ABIC regarding the "selling" of the Renter's Policy (Count Four); (5) a deceitful and unconscionable CFA violation against GEICO regarding the "selling" of the Renter's Policy (Count Five); (6) a CFA violation against GEICO regarding the "selling" of the Renter's Policy (Count Six); (7) a CFA violation against Defendants regarding the "selling" of the GEICO umbrella and automobile insurance policies (Count Seven); (8) a tortious interference with prospective economic advantage claim against Defendants (Count Eight); (9) a common law fraud claim against Defendants (Count Nine); (10) an intentional breach of contract claim against Defendants (Count Ten); (11) a breach of a fiduciary duty claim against Defendants (Count Eleven); (12) a breach of contract claim against Defendants (Count Twelve); (13) a CFA strict

liability claim against Defendants regarding the "changing terms" of all insurance policies (Count Thirteen); and (14) a CFA strict liability claim against Defendants regarding "changing terms" of "issued policies" (Count Fourteen). (*See id.* ¶¶ 82-204.) Plaintiff seeks $172,800,000 in damages. (*Id.* at 41.)

On November 10, 2016, in lieu of filing an answer, Defendants filed separate motions to dismiss. (ECF Nos. 20-21.) Plaintiff opposes the motions. (ECF Nos. 23-24.)[4]

## II.    LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

---

[4] Plaintiff's briefs in opposition are nearly identical.

liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir.1999). Specifically, courts may consider any "'document *integral to or explicitly relied upon* in the complaint . . . ." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426 (emphasis in original).

Additionally, fraud based claims are subject to a heightened pleading standard, requiring a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The level of particularity required is sufficient details to put the defendant on notice of the "precise misconduct with which [it is] charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citation omitted). At a minimum, Rule 9(b) requires a plaintiff to allege the "essential

factual background that would accompany the first paragraph of any newspaper story—that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citation omitted). The heightened pleading standard set forth in Rule 9(b) applies to Plaintiff's CFA and common law fraud claims. *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008) (applying Rule 9(b) to CFA and common law fraud claims).

## III. DECISION

### A. CFA (Counts One, Two, Three, Four, Five, Six, Seven, Thirteen, and Fourteen)

Nine of the fourteen counts in Plaintiff's Complaint are claims against Defendants for violations of the CFA. Counts One and Four are CFA violations against ABIC; Counts Two, Three, Five, and Six are CFA violations against GEICO, and Counts Seven, Thirteen, and Fourteen are CFA violations against all Defendants. (*See* ECF No. 1 ¶¶ 82-204.) Defendants argue none of these counts state a claim against Defendants under the CFA. (ECF No. 20-2 at 15 and GEICO's Br. (ECF No. 21-1) at 19.) Specifically, ABIC argues Plaintiff "fails to plead any facts demonstrating that any of Defendants engaged in any affirmative act or intentional omission that constitutes an unconscionable or deceptive practice or that they violated any regulation enacted under the CFA." (ECF No. 20-2 at 16.) It further argues Plaintiff did not ascertain a loss. (*Id.* at 20-23.) GEICO argues the Complaint fails to allege any "unlawful practice" performed by GEICO. (ECF No. 21-1 at 20.) GEICO further argues Plaintiff did not ascertain a loss as a result of an unlawful practice. (*Id.* at 29.) Plaintiff argues he has sufficiently pled CFA causes of action. Specifically, he argues he sustained an ascertainable loss because he was exposed to "peril." (ECF No. 23 at 4-17 and ECF No. 24 at 4-17.)

The CFA states, in pertinent part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; . . . .

N.J.S.A. § 56:8-2. Courts have interpreted this section to require the following three elements to state a cause of action under the CFA: "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009) (citing *Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 389 (2007)).

An "unlawful practice" is defined as:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . .

N.J.S.A. 56:8-2. "The [CFA] creates three categories of unlawful practices: affirmative acts, knowing omissions, and violations of state regulations." *Maniscalco v. Brother Int'l Corp. (USA)*, 627 F. Supp. 2d 494, 499 (D.N.J. 2009) (quoting *Vukovich v. Haifa*, No. 03-737, 2007 WL 655597, *9 (D.N.J. Feb 27, 2007) (citing *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994))). Affirmative acts require no showing of intent on behalf of the defendant. *See Cox*, 138 N.J. at 17; *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378 (1977). "Thus, a defendant who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation,

negligence or the intent to deceive." *Vukovich*, 2007 WL 655597, at *9 (citation omitted). "In contrast, when the alleged consumer fraud consists of an omission, a plaintiff must show that the defendant acted with knowledge, thereby making intent an essential element of the fraud." *Id.*

"The third category of unlawful acts consists of violations of specific regulations promulgated under the [CFA]." *Cox*, 138 N.J. at 18-19. "In those instances, intent is not an element of the unlawful practice, and the regulations impose strict liability for such violations." *Id.* (citation omitted). Unlawful acts expressly regulated by other statutes, regulations, or rules not promulgated under the CFA can give rise to a CFA claim. See *Henderson v. Hertz Corp.*, No. L-6937-03, 2005 WL 4127090, at *5 (N.J. Super. Ct. App. Div. June 22, 2006); *Lemelledo v. Beneficial Mgmt. Corp. of Am.*, 150 N.J. 255, 266-73 (1997). However, the CFA does not create strict liability for violations of other statutes, regulations, or rules not promulgated under the CFA. *See Henderson*, 2005 WL 4127090, at *5.

An "ascertainable loss" is one that is "quantifiable or measurable." *Thiedemann v. Mercedes-Benz USA, LLC,* 183 N.J. 234, 248. (2005). A "plaintiff must suffer a definite, certain and measurable loss, rather than one that is merely theoretical." *Bosland*, 197 N.J. at 558. However, New Jersey courts have found that "if the defendant or a non-party takes action to ensure that plaintiff sustains no out-of-pocket loss or loss of value prior to litigation, then plaintiff's CFA claim may fail." *D'Agostino v. Maldonado*, 216 N.J. 168, 194 (2013); *see Thiedemann*, 183 N.J. at 251-52 (finding no ascertainable loss when defendant repaired defect in accordance with terms of warranty); *Meshinsky v. Nichols Yach Sales, Inc.*, 110 N.J. 464, 468, 475 (1988) (finding no ascertainable loss because defendant repaid bank loan). In *Thiedemann*, the court dismissed CFA claims against the manufacturer of an automobile, who sold automobiles with defective fuel gauges, for lack of an ascertainable loss. *Thiedemann*, 183 N.J. at 251. When the gauge defect was

discovered, the manufacturer repaired the issues at no cost to the consumer, pursuant to the warranty of sale. *Id.* at 241-42. While the plaintiffs experienced difficulties with stalled engines and depleted gas tanks before the repairs, and were concerned about potential negative perceptions about their vehicles on future resale, they presented no out-of-pocket expenses or other "objectively verifiable damages" arising out of the circumstances. *Id.* at 242.

Courts support alleged damages based on an out-of-pocket theory or a benefit of the bargain theory. *See Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 99-103 (D.N.J.2011); *Thiedemann,* 183 N.J. at 248. "An out-of-pocket-loss theory will suffice only if the product received was essentially worthless." *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 374 (D.N.J. 2015). "A benefit-of-the-bargain theory requires that the consumer be misled into buying a product that is ultimately worth less than the product that was promised." *Id.* (citation omitted).

Additionally, plaintiffs must set forth allegations sufficient to show those losses are causally connected to defendant's alleged conduct. *Bosland*, 197 N.J. at 557. It is not sufficient to make conclusory or broad-brush allegations regarding defendant's conduct; plaintiff must specifically plead those facts. *Torres-Hernandez*, No. 3:08-CV-1057-FLW, 2008 WL 5381227, at *7 (D.N.J. Dec. 17, 2008). This requires, for example, pleading when and to whom the alleged fraudulent statements were made. *See Dewey*, 558 F. Supp. 2d at 527.

The Court finds Plaintiff has failed to plead any facts demonstrating Defendants engaged in an unlawful conduct in violation of the CFA. Plaintiff's Complaint alleges nine counts of CFA violations against Defendants. All counts relate to the same fact pattern, the "selling" and "changing terms" of the Renter's Policy, but fall in all three categories of unlawful practices. (*See* ECF No. 1 ¶¶ 82-204.) He alleges Defendants affirmatively changed his policy terms with intent

to deceit him, omitted to tell him about the change in the terms, and that Defendants violated state regulations. (*Id.*) Accordingly, the Court evaluates each of the claims and finds Plaintiff fails to state a claim for each.

As to ABIC, Plaintiff alleges ABIC's "violated the applicable regulations and/or laws regarding notice, changing terms and/or cancellation of the aforesaid two renter's polices" and "violation of said applicable laws and/or regulations constitutes strict liability" under the CFA. (*Id.* ¶ 87-88, 192-93, 200-02 (Counts One, Thirteen, and Fourteen).) Specifically, he alleges ABIC failed to comply with the New Jersey Administrative Code, section 11:1-20.2, governing notices of renewal, cancelation, and non-renewal of commercial and homeowner's insurance policies. (*Id.* ¶ 62.) Plaintiff further argues reduction of the personal liability coverage in February 2014 was "surreptitious[], improper[], knowing[], deceitful[], illegal,  and malicious[] . . . with the intent of leaving Plaintiff without knowledge of a gap of $200,000 in each policy for each of the two years for which he was personally liable." (*Id.* ¶¶ 112, 137 (Counts Four and Seven).)

Plaintiff offers no factual allegations to support his bare conclusions that ABIC acted deceitfully either through an affirmative act or through an omission. Indeed, the Complaint reflects the opposite. Although Plaintiff initially sought and secured a Renter's Policy consisting of $300,000 personal liability coverage per occurrence in January 2014, *id.* ¶ 13, and ABIC changed that policy a month later, Plaintiff has failed to prove the affirmative act of changing the policy was deceitful or that ABIC omitted to tell Plaintiff of the change in terms.

On February 26, 2014, ABIC alleges it sent Plaintiff an amended declaration page reflecting that his personal liability was reduced to $100,000 per occurrence. (ECF No. 20-2 at 6). Plaintiff alleges he never received the letter; and for the purposes of this motion the Court accepts that statement as true. (ECF No. 1 ¶ 54.) Nevertheless, Plaintiff *admits* he received an email from

rentersmail@assurant.com attaching a revised declaration page, indicating Plaintiff's personal liability was reduced to $100,000 per occurrence. (*Id.* ¶ 21.) The declaration page reflected a change in premium from $116 to $100, and provided Plaintiff with a $16 credit. (*Id.*) Further, toward the end of the first policy term, sometime in November 2014, Plaintiff renewed the Renter's Policy for the period of January 31, 2015 to January 31, 2016. (*Id.* ¶ 30.) Like the amended declaration page sent to Plaintiff in February 2014, the renewal declaration page reflected a personal liability coverage of $100,000 per occurrence, not $300,000. (*Id.*) On January 12, 2015, Plaintiff also received a confirmation email from Assurant listing "personal liability at $100,000 without the 'per occurrence' language." (*Id.* ¶ 32.) Finally, sometime in December 2015, Plaintiff renewed his policy for a third policy term from January 31, 2016 to January 31, 2017. (*Id.* ¶ 34.) Similarly, the renewal declaration page reflected a personal liability coverage of $100,000 per occurrence. (*Id.*) Plaintiff also received a confirmation email from Assurant listing "personal liability at $100,000 without the 'per occurrence' language." (*Id.*)

Contrary to Plaintiff's allegations that Defendants acted deceitfully "with the intent of leaving Plaintiff without knowledge of a gap of $200,000 in each policy for each of the two years," the Complaint demonstrates otherwise. Plaintiff was clearly put on notice that his personal liability coverage was reduced. (*Id.* ¶ 21 and Ex. C to ECF No. 20-3.) Plaintiff's argument the February 2014 email from rentersmail@assurant.com, attaching a revised declaration page and indicating Plaintiff's personal liability was reduced to $100,000 per occurrence, was "extremely misleading" because Plaintiff had just obtained the $300,000 per occurrence policy a month before is unpersuasive. (ECF No. 1 ¶ 23.) The declaration page attached to the email clearly and unambiguously put him on notice of a policy change and explicitly reflected personal liability at

$100,000 per occurrence. Lastly, the fact that Plaintiff did not acknowledge the correspondences sent by ABIC until his third renewal is of no effect.

This Court also finds Plaintiff has not pled ABIC acted unlawfully pursuant to the CFA by violating state regulations. Plaintiff argues ABIC should be strictly liable pursuant to the CFA because it violated New Jersey Administrative Code, Section 11:1-20.2. (*Id.* ¶ 62.) New Jersey Administrative Code, Section 11:1-20.2 states in pertinent part:

> (a) No policy shall be nonrenewed upon its expiration date unless a valid written notice of nonrenewal has been mailed or delivered to the insured in accordance with the provisions of this subchapter. For the purpose of this subchapter, policies not having a fixed expiration date shall be deemed to expire annually on the anniversary of their inception.
>         . . . .
>
> (d) No cancellation, other than a cancellation based upon nonpayment of premium or for moral hazard as defined in (f) below, shall be valid unless notice is mailed or delivered by the insurer to the insured, and to any person entitled to notice under the policy, not more than 120 days nor less than 30 days prior to the effective date of such cancellation except, however, that failure to send such notice to any designated mortgagee or loss payee shall invalidate the cancellation only as to the mortgagee's or loss payee's interest.
> (e) A policy shall not be cancelled for nonpayment of premium unless the insurer, at least 10 days prior to the effective cancellation date, has mailed or delivered to the insured notice as required in this subchapter of the amount of premium due and the due date. The notice shall clearly state the effect of nonpayment by the due date. No cancellation for nonpayment of premium shall be effective if payment of the amount due is made prior to the effective date set forth in the notice.
>  (f) A policy shall not be cancelled for moral hazard unless the insurer, at least 10 days prior to the effective termination date, has mailed or delivered to the insured notice as required in this subchapter and the basis for termination conforms to the [] definitions of moral hazard
>         . . . .
> (g) No nonrenewal or cancellation shall be valid unless the notice contains the standard or reason upon which the termination is premised and specifies in detail the factual basis upon which the insurer relies.

(h) All notices of nonrenewal and cancellation, except those for nonpayment of premium, must contain a statement which shall be clearly and prominently set out in boldface type or other manner which draws the reader's attention advising the insured that the insured may file a written complaint about the cancellation or nonrenewal with the New Jersey Department of Banking and Insurance, Division of Enforcement and Consumer Protection, PO Box 325, Trenton, New Jersey 08625–0325. The statement also shall advise the insured to contact the Department of Banking and Insurance immediately, in the event he or she wishes to file a complaint.

(i) No nonrenewal or cancellation shall be valid unless notice thereof is sent;

1. By certified mail; or

2. By first class mail, if at the time of mailing the insurer has obtained from the Post Office Department a date stamped proof of mailing showing the name and address of the insured, and the insurer has retained a duplicate copy of the mailed notice.

. . . .

(m) Each notice of renewal or nonrenewal by an insurer authorized to transact medical malpractice liability insurance in this State for a medical malpractice liability policy shall comply with the requirements applicable to such notices set forth in (a) through (l) above, except that such notices shall be mailed or delivered by the insurer to the insured not less than 60 days prior to the expiration of the policy.

N.J.A.C. 11:1-20.2. First, this regulation deals exclusively with the cancellation or non-renewal of policies. Here, it is uncontested that the Renter's Policy was renewed three times. Further, at no time did ABIC cancel or fail to renew the Renter's Policy. Because this regulation does not discuss the changing of policy terms, the Court finds Plaintiff has not sufficiently pled ABIC violated New Jersey Administrative Code, Section 11:1-20.2.

Further, the CFA only allows for strict liability when a defendant violates "specific regulations promulgated under the [CFA]." *Cox*, 138 N.J. at 18-19. Unlawful acts expressly regulated by other statutes, regulations, or rules can give rise to a CFA claim, but do not impose strict liability. *See Henderson*, 2005 WL 4127090, at *5; *Lemelledo*, 150 N.J. at 266-73.

Plaintiff's CFA claims against GEICO fail for similar reasons. As to GEICO, Plaintiff alleges GEICO

> knew of and cooperated with [] ABIC in the violation of applicable regulations and/or laws concerning notice, changing terms, and/or cancellation of two renter's policies causing the $200,000 gap between the renters policies and the umbrella polices each of the two years.

(ECF No. 1 ¶ 97 and *see* ¶¶ 192-94 (Counts Two and Thirteen).) He further alleges, in the alternative, that

> even if [GEICO] was unaware that [] ABIC . . . violated the applicable regulations and/or laws regarding notice, changing terms and/or and cancellation of the two renter's policy, due to [GEICO] requiring the Plaintiff to purchase the policies through [] ABIC and the strategic partnership between these [] Defendants, [GEICO] is also strictly liable under the CFA for the violation of the two renter's policies.

(*Id.* ¶ 103 and *see* ¶¶ 201-02 (Counts Three and Fourteen).) Further, he argues GEICO

> knew of and cooperated with [] ABIC [] in surreptitiously, improperly, purposefully, knowingly, deceitfully, maliciously, and illegally changing the terms of the renter's policies by decreasing the $300,000 in liability coverage to $100,000, with the intent of leaving the Plaintiff without knowledge of a gap of $200,000 in each policy for each of the two years for which he was personally liable.

(*Id.* ¶ 124 and *see* ¶ 137 (Counts Five and Seven).) Even if GEICO

> did not cooperate and was not aware that [] ABIC . . . were surreptitiously, improperly, knowingly, deceitfully, maliciously and illegally changing the terms of the renter's policy, because [GEICO] required that Plaintiff acquire his underlying coverage from [] ABIC, and due to its relationship with [ABIC], [GEICO] is also liable under the CFA for each of the violations regarding each of the policies for each of the two years.

(*Id.* ¶ 129 (Count Six).) Since Plaintiff alleges GEICO cooperated with ABIC to violate regulations and deceit him in selling and changing the terms of the Renter's Policy, all claims against GEICO rely on whether or not ABIC's conduct was unlawful under the CFA. Because the Court finds

Plaintiff's allegations as to ABIC's unlawful conduct fail to meet both the CFA and Federal Rule of Civil Procedure 9(b)'s requirement, Plaintiff's allegations as to GEICO also fail.

Even if the Court found Plaintiff's facts were pled with sufficient particularity to demonstrate Defendants acted unlawfully in violation of the CFA, it finds Plaintiff has failed to plead an "ascertainable loss." An "ascertainable loss" is one that is "quantifiable or measurable," *Thiedemann,* 183 N.J. at 248, and "definite, certain and measurable [], rather than one that is merely theoretical." *Bosland*, 197 N.J. at 558. Here, Plaintiff admits he never made a claim under the renter's or umbrella policy, was never denied coverage, or forced to cover any gap in coverage. (*Id.* ¶¶ 152-53.) Instead, he argues he sustained an "ascertainable loss" because he was exposed to "peril" due to the reduction of the liability limits of the ABIC Renter's Policy (ECF No. 23 at 4-17 and ECF No. 24 at 4-17.) His exposure to peril is not "quantifiable or measurable" pursuant to the CFA.

Even if the gap in coverage constituted an ascertainable loss, which the Court finds it does not, New Jersey courts have found that "if the defendant or a non-party takes action to ensure the plaintiff sustains no out-of-pocket loss or loss of value prior to litigation, then plaintiff's CFA claim may fail." *D'Agostino*, 216 N.J. at 194; *see Thiedemann*, 183 N.J. at 251-52 (finding no ascertainable loss when defendant repaired defect in accordance with terms of warranty); *Meshinsky*, 110 N.J. at 468 (finding no ascertainable loss because defendant repaid bank loan). Here, Plaintiff admits "Defendants corrected the gap in coverage." (ECF No. 1 ¶ 80.) In fact, ABIC agreed to increase the liability coverage to $300,000 per occurrence "back to the inception date of the policy" so long as Plaintiff paid the $16 premium. (Ex. D to ECF No. 20-3.) Further, the Renter's Policy

> is an "occurrence"-based policy, which applies so long as the
> "occurrence" at issue takes place during the period in which the

policy is in effect, regardless of whether the claim against the insured as a result of the "occurrence" is made after the policy ends. Thus, if in the future, a claim is made against Plaintiff based on an "occurrence" that took place when the ABIC policy was in place, ABIC would owe coverage for that claim, and so long as [Plaintiff] pays the additional premium, the ABIC policy would provide liability coverage up to $300,000 per "occurrence".

(GEICO Reply Br. (ECF No. 25) at 7 n.3.) Because ABIC agreed to correct the gap in coverage back to the inception date of the policy prior to litigation, Plaintiff has not suffered an ascertainable loss. Plaintiff's cancellation of the policy, instead of accepting ABIC's offer is of no consequence.

Accordingly, the Court finds the above allegations fail to meet both the CFA and Federal Rule of Civil Procedure 9(b)'s particularity requirement and **GRANTS** ABIC and GEICO's Motions to Dismiss all CFA claims (Counts One, Two, Three, Four, Five, Six, Seven, Thirteen, and Fourteen) **WITHOUT PREJUDICE**.

### B. Common Law Fraud (Count Nine)

Count Nine of Plaintiff's Complaint alleges a claim against Defendants for "fraudulent sale of automobile, umbrella and renters insurance." (ECF No. 1 ¶¶ 157-67.) Specifically, Plaintiff alleges

> 163) Though the [GEICO] auto insurance policy still carried the umbrella coverage, the coverage was still flawed because to carry the auto insurance, the Plaintiff was forced to <u>unknowingly</u> carry $200,000 exposure of personal liability on the renters/umbrella side of his coverage during each of the two years rendering the automobile polices and umbrella policies deficient.
>
> 164) In fact, these automobile, umbrella and renters policies were deceitfully sold because Defendants . . . were surreptitiously, purposefully, knowingly, deceitfully, and maliciously creating a $200,000 gap in liability coverage between the renters policy and umbrella policy per year for the two years.
>
> 165) Defendants represented that they were providing Plaintiff proper, apt, and suitable insurance coverage to induce him to purchase the policies.
>
> 166) Plaintiff relied on the representation when he purchased the policies to his detriment.

(*Id.* ¶¶ 163-66.) ABIC argues Plaintiff fails to allege a "misrepresentation of fact" "creating or hiding th[e $200,000] gap." (ECF No. 20-2 at 23-24). GEICO argues Plaintiff "fails to identify the specific misrepresentations made by GEICO, the date, time, or place the representations were made, or who made them." (ECF No. 21-1 at 36-37.) GEICO further alleges Count Nine "does not explain how Plaintiff relied on the representations by GEICO and how that reliance caused Plaintiff to sustain damages." (*Id.*)

To state a claim for fraud under New Jersey law, a plaintiff must allege "(1) [the defendant made] a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) [the defendant had] an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 394 N.J. Super. 237, 246 (App. Div. 2007) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).

Plaintiff makes only a conclusory allegation that Defendants committed fraud in selling and changing the terms of the policy, without alleging any specific facts regarding the elements of this fraud claim. Plaintiff pleads no facts demonstrating Defendants misrepresented any facts; that Defendants knew the representation was false; or that Plaintiff was injured as a result. Although Plaintiff initially sought and secured a Renter's Policy consisting of $300,000 personal liability coverage per occurrence in January 2014 (ECF No.1 ¶ 13) and ABIC changed that policy a month later, Plaintiff has failed to prove ABIC or GEICO misrepresented any facts. Plaintiff was clearly put on notice that his personal liability coverage was reduced. (*Id.* ¶ 21 and Ex. C to ECF No. 20-3.) The declaration page attached to ABIC's February 2014 email clearly put him on notice of a policy change and unambiguously reflected personal liability at $100,000 per occurrence. (*Id.*) Even if the Court accepts Plaintiff's argument that ABIC originally misrepresented the Renter's

Policy would cover $300,000 per occurrence, Plaintiff has failed to allege facts demonstrating ABIC or GEICO knew the representation was false. Lastly, Plaintiff has failed to plead he suffered damages as a result of the $200,000 gap. Here, Plaintiff admits he never made a claim under the renter's or umbrella policy, was never denied coverage, or forced to cover any gap in coverage. (ECF No. 1 ¶¶ 152-53.) As such, Plaintiff has failed to state a claim against Defendants for fraud, particularly under the heightened pleading standard of Rule 9(b). Accordingly, Defendants' Motions to Dismiss Plaintiff's common law fraud claim (Count Nine) are **GRANTED WITHOUT PREJUDICE**.

### C. Tortious Interference With Prospective Economic Advantage (Count Eight)

Count Eight of Plaintiff's Complaint alleges "[d]ue to [] Defendants [sic] surreptitious, knowing, deceitful, malicious and illegal conduct, Plaintiff did not exercise his right to purchase suitable insurance policies (automobile, renters, and umbrella) from other companies for a two year period which would have provided him the proper protection." (ECF No. 1 ¶ 152.) ABIC argues Plaintiff's claim "fails because it offers only conclusory allegations that lack any of the specificity required to adequately plead [a tortious inference] claim." (ECF No. 20-2 at 25.) Specifically, Plaintiff's Complaint "does not identify any alternative insurance carrier with whom [Plaintiff] had a prospective relationship, nor does it allege any action [Plaintiff] took in pursuit of a relationship with an alternative insurance carrier." (*Id.* at 26.) GEICO contends Plaintiff's Complaint does not plead any of the elements required of a tortious interference claim. (ECF No. 21-1 at 35.) Specifically, GEICO argues the Complaint "fails to allege that Plaintiff made any effort to purchase insurance from other insurers, that he would have been able to purchase the insurance had he made these efforts, or that GEICO was aware that Plaintiff was attempting to

obtain this other insurance and that it intentionally interfered with Plaintiff's attempt to purchase the insurance and did so maliciously." (*Id.*) The Court agrees with Defendants.

To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege

> a plaintiff's reasonable expectation of economic benefit or advantage, (2) the defendant's knowledge of that expectancy, (3) the defendant's wrongful, intentional interference with that expectancy, (4) in the absence of interference, the reasonable probability that the plaintiff would have received the anticipated economic benefit, and (5) damages resulting from the defendant's interference.

*Fineman v. Armstrong World Indus., Inc.*, 980 F.2d 171, 186 (3d Cir. 1992) (citing *Printing Mart–Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751 (1989)). "A complaint must demonstrate that a plaintiff was in 'pursuit' of business" and "that the interference was done intentionally and with 'malice.'" *Printing Mart–Morristown*, 116 N.J. at 751. "Even at the pleading stage, a plaintiff may not rest a claim . . . on a mere hope that additional contracts or customers would have been forthcoming . . . . The complaint must allege facts that . . . would give rise to a reasonable probability that particular anticipated contracts would have been entered into." *Novartis Pharm. Corp. v. Bausch & Lomb, Inc.*, No. 07-5945 (JAG), 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008) (quoting *Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, 801 F. Supp. 1450, 1459 (E.D. Pa. 1992)).

Here, Plaintiff fails to articulate what particular economic advantage or contract he lost as a result of Defendants alleged interference. Plaintiff does not identify one insurance carrier, company, or other entity, with whom he currently does business, or would have done business with but for Defendants alleged interference. Further, Plaintiff's Complaint does not allege any specific contract or economic advantage lost by virtue of Defendants alleged interference. Plaintiff

must plead an injury that is more concrete than his "right to purchase suitable insurance policies" from unknown or hypothetical insurance carriers. Accordingly, Defendants' Motions to Dismiss Plaintiff's tortious interference with prospective economic advantage claim (Count Eight) are **GRANTED WITHOUT PREJUDICE**.

### D. Breach of Fiduciary Duty (Count Eleven)

Count Eleven of Plaintiff's Complaint alleges "Defendants owed Plaintiff a fiduciary duty because they were insuring him" and that Defendants breached that duty "surreptitiously, purposefully, knowingly, deceitfully, and maliciously creating a $200,000 gap in liability coverage between the renters policy and umbrella policy per year for the [] two years . . . thereby intentionally breaching their fiduciary obligations under each of the eight (8) contracts of insurance." (ECF No. 1 ¶¶ 178-79.) ABIC argues Plaintiff's "claim for breach of a fiduciary duty (Count Eleven) fails because [Plaintiff] has not alleged facts sufficient to demonstrate the existence of a fiduciary duty." (ECF No. 20-2 at 29.) GEICO argues Plaintiff has failed to allege "special circumstances" giving rise to a fiduciary duty. (ECF No. 21-1 at 39.)

Under New Jersey law, an insurer owes its insured a fiduciary duty only under certain circumstances. *Polito v. Cont'l Cos. Co.,* 689 F.2d 457, 462 (3d Cir. 1982). The New Jersey Supreme Court has found an insurer acting as an agent to the insured when settling claims owes a fiduciary duty. *See Lieberman v. Emp'rs Ins. of Wausau,* 84 N.J. 325, 336 (2007). "[A]n insurance company owes a duty of good faith to its insured in processing a first-party claim." *Pickett v. Lloyd's*, 131 N.J. 457, 467 (1993). Thus, absent "special circumstances" a claim for fiduciary duty cannot survive. *Reddick v. Allstate N.J. Ins. Co.*, No. 11-365 (KSH), 2011 WL 6339688, at *7 (D.N.J. Dec. 16, 2011) (citations omitted) ("[A]bsent a special relationship, parties operating in

the normal contractual posture, not as principal and agent, are typically not in a fiduciary relationship.").

Here, the Complaint does not allege anything to suggest the relationship between Plaintiff and Defendants exceeds an ordinary contractual relationship. Plaintiff's basis for finding a fiduciary relationship is essentially that he was insured by the Defendants. (ECF No. 1 ¶ 178.) Indeed, neither Plaintiff nor a third-party has made a claim under the renter's or umbrella policy. (*Id.* ¶¶ 152-53.) Therefore, Plaintiff and Defendants never had the occasion to enter into a fiduciary relationship. Further, as to GEICO, Plaintiff's Complaint takes issue with the Renter's Policy, the policy that caused the $200,000 gap, and it is uncontested GEICO did not issue that policy. Therefore, GEICO could not have breached a fiduciary duty. As such, Defendants' Motions to Dismiss Plaintiff's breach of fiduciary duty claim (Count Eleven) are **GRANTED WITHOUT PREJUDICE**.

### E. Breach of Contract (Counts Ten and Twelve)

Count Ten of Plaintiff's Complaint is for "intentional breach of contract." (ECF No. 1 at 57.) Defendants argue New Jersey law does not recognize a separate cause of action for "intentional" breach of contract. (ECF No. 20-2 at 32 n.20 and ECF No. 21-1 at 37.) Because Plaintiff concedes there is no cause of action for intentional breach of contract in New Jersey, this Court **GRANTS** Defendants' Motions to Dismiss Count Ten. (ECF No. 23 at 28 and ECF No. 24 at 28-29 ("Plaintiff concedes that in New Jersey law there is no action for intentional breach of contract.").)

Count Twelve of Plaintiff's Complaint is for breach of contract as to all Defendants. (ECF No. 1 at 59-60.) Specifically, Plaintiff alleges:

> 182) Defendants . . . created a $200,000 gap in liability coverage between the renters policy and umbrella policy per year

for the two years thereby breaching their obligations under the contract.

183) Though the [GEICO] auto insurance policy still carried the umbrella coverage, the coverage of the auto and umbrella policies were still flawed because to carry the auto insurance, [] Plaintiff was forced to <u>unknowingly</u> carry $200,000 exposure of personal liability due to a $200,000 gap in the liability coverage on the renters/umbrella side of his coverage for each of the two years rendering the automobile policies and umbrella policies deficient.

184) In providing deficient and unsuitable insurance policies because of the $200,000 gap in coverage for the two successive years of January 2014-15 and January 2015-2016, the Defendants committed breach of the eight contracts of insurance (4 automobile, 2 renters and 2 umbrella).

185) Plaintiff paid full premiums for the eight policies with deficient coverage and also was exposed to risk.

(ECF No. 1 ¶¶ 182-85.) ABIC argues Plaintiff fails to allege the gap in coverage was a breach of any term of his insurance policies and Plaintiff fails to plead any damages arising from any alleged breach of the insurance contracts. (ECF No. 20-2 at 32-33.) GEICO argues "since GEICO was not a party to the ABIC Renters policy, Plaintiff may not maintain a cause of action against GEICO for breach of the policy." (ECF No. 21-1 at 37.) "Nor may Plaintiff maintain a breach of contract claim against GEICO Auto policies or under the GEICO Umbrella policies, since Plaintiff does not allege that GEICO breached any terms or conditions to these policies." (*Id.* at 38.)

"A party alleging a breach of contract satisfies its pleading requirement if it alleges (1) a contract; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citations omitted). Because this Court previously found Plaintiff has failed to plead damages from the $200,000 gap in coverage, it **GRANTS** Defendants' Motions to Dismiss Count Twelve **WITHOUT PREJUDICE**, and need not address the remaining breach of contract elements.

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are **GRANTED WITHOUT PREJUDICE**.

Date: June 22, 2017

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**